<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CARTRIDGE ACTUATED DEVICES, INC, <br><br> Plaintiff, <br><br> v. <br><br> THE FLINCHBAUGH COMPANY, INC., <br><br> Defendant/Third-Party Plaintiff, <br><br> v. <br><br> BODYCOTE THERMAL PROCESSING, INC., <br><br> Third-Party Defendant. | Case No. 2:26-cv-01131 (BRM) (MAH) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a motion by Plaintiff Cartridge Actuated Devices, Inc. ("Cartridge") to remand this action to the Superior Court of New Jersey, Law Division, Essex County ("Superior Court of New Jersey"), which includes a request for attorneys' fees and costs ("Motion").[1] (ECF No. 3.) Defendant The Flinchbaugh Company, Inc. ("Flinchbaugh") opposed the motion. (ECF No 18.) Cartridge filed a Reply. (ECF No. 19.) Having reviewed and considered the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b), for the reasons set forth below and for

---

[1] Cartridge first filed a pre-motion letter in anticipation of a motion to remand. (ECF No. 3.) After speaking with the parties and their attorneys, the Court determined the pre-motion letter "shall be deemed and treated as [a] [motion] for remand." (ECF No. 17 at 2.)

good cause having been shown, Cartridge's Motion is **GRANTED**, and its request for attorneys' fees and costs is **DENIED**.

**I.      BACKGROUND**

This case arises from a commercial dispute over "defective metal 'body cartridges' that . . . Flinchbaugh[] manufactured, sold[,] and shipped to . . . [Cartridge]." (*Id.* ¶ 1.) Flinchbaugh "markets, distributes, and sells products to customers . . . in New Jersey, including [Cartridge]." (*Id.* ¶ 11.) Cartridge is a New Jersey based designer and manufacturer of precision energetic and pyrotechnic devices. (Compl. (ECF No. 1-1) ¶ 9.)

On December 12, 2025, Cartridge filed its Complaint in the Superior Court of New Jersey. (ECF No. 1-2 at 2.) Cartridge asserts the following claims against Flinchbaugh: (1) breach of an express warranty (ECF No. 1-1 ¶¶ 28–33), (2) breach of implied warranties of merchantability and fitness for a particular purpose (*id.* ¶¶ 34–41), (3) breach of contract (*id.* ¶¶ 42–47), and (4) unjust enrichment (*id.* ¶¶ 48–50). In addition to various forms of monetary relief, including damages and attorneys' fees, Cartridge asks the Court to issue a declaratory judgment declaring and adjudging: (1) that "Flinchbaugh's acts and omissions constitute a material breach of the Terms and Conditions of the purchase orders under New Jersey law," and (2) that Cartridge "has no duty or obligation to compensate Flinchbaugh for defective or non-conforming goods, and no duty or obligation to purchase any further inventory from Flinchbaugh arising out of or relating to those lots of body cartridges that have been determined to be defective or non-conforming" because of those breaches. (ECF No. 1-1 at 13–14.)

On December 12, 2025, Cartridge's counsel "emailed the filed Complaint and Summons to [Flinchbaugh's] counsel . . . , inquiring whether he was authorized to accept service." (ECF No. 3 at 1.) On December 15, 2025, Flinchbaugh's counsel replied that he was authorized by his client

to accept service.[2] (ECF No. 18 at 3; *see also* ECF No. 19-1 at 10–11 ("I have been authorized by my client to accept service of the Summons and Complaint. Are you available in the next few days to discuss this matter at length? If so, please provide some dates and times to schedule a call.").) That same day, Cartridge's counsel circulated the Acknowledgment of Service for Flinchbaugh's counsel to sign. (ECF No. 19-1 at 10.) Despite the email indicating he was authorized to accept service, Flinchbaugh's counsel did not sign and execute the Acknowledgement of Service expressly referring to December 15, 3025, as the waiver date until January 13, 2026.[3] (ECF No. 3 at 2 ("[Flinchbaugh's] counsel returned the executed Acknowledgment of Service . . . on January 13, 2026."); ECF No. 18 ("[Flinchbaugh's] counsel signed and executed the Acknowledgment of Service forms on January 13, 2026.").) In sending the executed Acknowledgment of Service, Flinchbaugh's counsel noted he had "failed to forward . . . the Acknowledgement of Service of the Complaint" and he "merely want[ed] to ensure all procedural boxes ha[d] been checked." (ECF No. 19-1 at 22.)

On February 4, 2026, Flinchbaugh removed the matter to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (ECF No. 1.) On February 9, 2026, Cartridge filed a pre-motion letter to address its proposed motion to remand because the removal was untimely. (ECF No. 3.) On February 11, 2026, Flinchbaugh filed an Answer with a jury demand and myriad counterclaims against Cartridge (ECF No. 5), and on February 12, 2026, Flinchbaugh filed a Third-Party Complaint against Third-Party Defendant Bodycote Thermal Processing Inc. ("Bodycote"). (ECF

---

[2] Cartridge points out Flinchbaugh's counsel copied Gregg Jenkins, the president and owner of Flinchbaugh (ECF No. 1-1 at 30–31) on the email (ECF No. 19-1 at 10).

[3] Cartridges contends that, in the interim, on December 17, 2025, counsel for both parties met and conferred "to discuss, among other things, an extension of [Flinchbaugh's] time to answer the Complaint while the parties discussed settlement." (ECF No. 3 at 2.) Based on the record before the Court, there was no discussion that Flinchbaugh had waived formal service. (*Id.*)

3

No. 6.) Flinchbaugh also responded to Cartridge's pre-motion letter, arguing removal was timely and Cartridge's request for attorneys' fees is unwarranted. (ECF No. 7.) On March 3, 2026, Cartridge filed an Answer to Flinchbaugh's counterclaims. (ECF No. 11.)

Pursuant to the Court's February 18, 2026 text order, the Court held a case management/settlement conference on March 25, 2026. (ECF Nos. 8, 14.) Based on the conference, the Court issued an order on March 30, 2026, explaining the issues raised in Cartridge's pre-motion letter could be addressed without the need for a formal motion, giving Flinchbaugh until April 2, 2026, to file an opposition to Cartridge's request for remand, and providing Cartridge until April 9, 2026, to file any reply in further support of its application. (ECF No. 17 at 2.) Flinchbaugh filed a letter brief in opposition to Cartridge's application to remand the action to the Superior Court of New Jersey on April 2, 2026 (ECF No. 18), and Cartridge filed a response on April 9, 2026 (ECF No. 19).[4]

On July 7, 2026, after the parties submitted confidential position papers pursuant to the Court's May 26, 2026 Order (ECF No. 28 at 2), the Court held an in-person settlement conference

---

[4] On May 11, 2026, before filing its pre-motion letter pursuant to the Court's judicial preferences, Bodycote filed a motion to dismiss Flinchbaugh's Third-Party Complaint. (ECF No. 24.) Four days later, Bodycote filed its pre-motion letter after "Flinchbaugh's counsel informed [Bodycote] . . . that the Court's Judicial Preferences require a premotion letter and request for a conference before filing . . . a motion [to] [dismiss]." (ECF No. 26.) Flinchbaugh responded to Flinchbaugh's premotion letter on May 22, 2026, in which Flinchbaugh proposed the following: (1) conversion of the July 7, 2026 Rule 16 conference to an in-person settlement conference, which all parties consented to, (2) hold Cartridge's remand application in abeyance pending the outcome of the settlement conference, which Cartridge consented to, and (3) deny Bodycote's motion to dismiss without prejudice following the submission of an amended third-party complaint and allow Bodycote to renew the motion pursuant to an agreed-upon briefing schedule. (ECF No. 27 at 3.) On May 26, 2026, the Court adopted Flinchbaugh's proposals; however, rather than denying Bodycote's motion to dismiss without prejudice, the Court administratively terminated that motion. (ECF No. 28 at 2.) Flinchbaugh filed an amended third-party complaint on June 1, 2026. (ECF No. 29.)

on July 7, 2026 (ECF No. 30). The parties were unable to reach a settlement. Accordingly, the hold on Cartridge's remand application is lifted and its request is ripe for adjudication. (ECF No. 28.)

## II.   LEGAL STANDARD

### A.  Removal and Remand

A notice of removal of a civil action must be filed by a defendant within thirty (30) days after "the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[T]he removal period for a defendant does not begin to run until that defendant is properly served or until that defendant waives service." *Di Loreto v. Costigan*, 351 F. App'x 747, 751 (3d Cir. 2009). "[E]ven in the context of a motion to remand, proper service of a defendant is not presumed, and the party asserting the validity of service bears the burden of proof on that issue." *Blount v. TD Bank, N.A.*, Civ. A. No. 20-18805, 2021 WL 2651760, at *2 (D.N.J. June 28, 2021) (internal quotation marks omitted) (quoting *Aetna Inc. v. Insys Therapeutics, Inc.*, 284 F. Supp. 3d 582, 584 (E.D. Pa. 2018)).

Upon the removal of an action, a plaintiff may challenge such removal by moving to remand the case back to state court. 28 U.S.C. § 1447. Grounds for remand include: "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure." *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993). A motion for remand on the basis of a procedural defect in the removal must be filed within thirty (30) days of the notice of removal, 28 U.S.C. § 1447(c), whereas "a motion to remand based on lack of subject matter jurisdiction may be made at any time before final judgment," *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1212–13 (3d Cir. 1991) (citing 28 U.S.C. § 1447(c)).

"The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Federal courts rigorously enforce the congressional intent to restrict federal diversity jurisdiction, and therefore removal statutes are "strictly construed against removal" and "doubts must be resolved in favor of remand." *Id.* at 396–403. Additionally, when a case is removed, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

### B.  Service of Process

Rule 4(h) provides two methods by which a defendant corporation, partnership, or association may be served absent a valid waiver of service. One of the permissible methods requires "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). "Delivering" as used in Rule 4(h)(1)(B) does not include service by mail. *See Umansky v. Melton Int'l Tackle, Inc.*, Civ. A. No. 17-4712, 2019 WL 5418050, at *11 (E.D. Pa. Oct. 23, 2019) ("Under Rule 4(h)(1)(B), 'delivery' requires personal service; certified mail is insufficient.").

Rule 4(h)(1) also provides that service may be made "in a judicial district of the United States . . . in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) states that service may be made "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). In other words, service in this District may be made in accordance with the New Jersey Rules of Court ("NJ Rules") relating to service

6

of process. *See Ershow v. Leslie Kane & Morgan, Inc.*, Civ. A. No. 18-00421, 2018 WL 3405259, at *1 (D.N.J. July 12, 2018).

"The primary method of obtaining [personal] jurisdiction over a defendant in [New Jersey] is by causing the summons and complaint to be personally served within [the] State pursuant to [NJ Rule] 4:4-3 . . . ." N.J. Ct. R. 4:4-4(a). Service may be "[u]pon a corporation, by serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of . . . [NJ Rule 4:4-4] on any officer, director, trustee or managing or general agent . . . ." N.J. Ct. R. 4:4-4(a)(6). Pursuant to NJ Rule 4:4-4(a)(1), for an individual, service must be

> upon a competent individual of the age of 14 or over, by delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over . . . or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf.

### III.    DECISION

#### A. The Signed Acknowledgment of Service Confirms that Flinchbaugh Waived Formal Service on December 15, 2025.

The facts regarding the exchanges between the parties' respective counsel are not in dispute. (*See* ECF Nos. 3, 18, 19.) Instead, the parties dispute the legal significance of these facts. (*Compare* ECF No. 3 at 3, *with* ECF No. 18 at 4.) Cartridge argues that as of December 15, 2025, Flinchbaugh, "through counsel, accepted and acknowledged service of the Summons and Complaint," making it "incontrovertible" that Flinchbaugh's "statutory deadline to file its notice of removal was January 12, 2026, thirty days after its receipt of the Summons and Complaint – or, at the very latest, January 14, 2026, thirty days after Defendant accepted service." (ECF No. 3 at 3.) Flinchbaugh, however, argues "[t]he thirty-day removal period began to run on January 13, 2026, the date the Defendant waived formal service of the Summons and Complaint by executing

and filing the Acknowledgment of Service . . . ." (ECF No. 18 at 4.)

Because Cartridge's email to Flinchbaugh's counsel does not satisfy Rule 4(h)(1)(B), which does not permit service via email, the inquiry as to the sufficiency of service turns on whether Cartridge complied with Rule 4(h)(1)(A). Put simply, the Court will assess whether Cartridge complied with the NJ Rules. *See* Fed. R. Civ. P. 4(h)(1)(A) (corporation may be served under relevant state law).

Under New Jersey law, personal service is the "primary method" of obtaining personal jurisdiction. N.J. Ct. R. 4:4-4(a). The manner in which summonses, writs, and complaints are to be served on corporations in New Jersey is set forth by NJ Rule 4:4-4(a)(6):

> serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties, provided, however, that a foreign corporation may be served only as herein prescribed subject to due process of law.

In turn, NJ Rule 4:4-4(a)(1) specifies the "manner prescribed" for service as stated in NJ Rule 4:4-4(a)(6). NJ Rule 4:4-4(a)(1) requires the summons and complaint to be personally served within this State:

> [u]pon a competent individual of the age of 14 or over, by delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein, or by delivering a copy

8

thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf.

Flinchbaugh is correct. (ECF No. 18 at 3.) Cartridge's email to Flinchbaugh's counsel does not constitute valid service pursuant to NJ Rules 4:4-4(a)(1), (6) as email alone is not one of the three methods of personal service laid out in NJ Rule 4:4-4 (a)(1).[5] *See Alicea v. Outback Steakhouse*, Civ. A. No. 10–4702, 2011 WL 1675036, at \*3 (D.N.J. May 3, 2011), *report and recommendation adopted*, Civ. A. No. 10-470, 2011 WL 2444235 (D.N.J. June 9, 2011) (distinguishing between personal service and the mailing of a summons and complaint). *See also Trs. of Sheet Metal, Air, Rail, Transp. Workers Int'l Ass'n Loc. 27 Annuity, Health & Welfare, Educ. & Suppplemental Unemployment Funds v. Cinnaminson Mech. Contractors, Inc.*, Civ. A. No. 22-6068, 2024 WL 397734, at \*4 (D.N.J. Feb. 2, 2024) (explaining NJ Rule 4:4-4(a)(1) "prescribes three manners of *personal service*" (emphasis added)).

Given that defective service of process did not start the removal clock, typically a court must determine whether and "when [Flinchbaugh] waived service so as to trigger [the] removal period." *Di Loreto*, 351 F. App'x at 752. Flinchbuagh does not argue that it did not waive service. (*See* ECF No. 18 at 4 ("[Flinchbaugh waived formal service of the Summons and Complaint . . . .").) As such, the Court need only decide when Flinchbaugh waived formal service.

Cartridge argues Flinchbaugh's December 15, 2025 response email is by itself a "textbook example of voluntary acceptance of service expressly authorized under the [NJ] . . . Rules." (ECF

---

[5] Because Cartridge's email does not amount to an attempt at personal service, Cartridge would not have been able to rely on NJ Rule 4:4-3(a) to satisfy the service requirement via registered or certified mail. *See* N.J. Ct. R. 4:4-3(a) ("If personal service cannot be effected after a reasonable and good faith attempt, which shall be described with specificity in the proof of service . . . service may be made by mailing a copy of the summons and complaint by registered or certified mail . . . .").

No. 19 at 8.) However, the facts and the plain text of NJ Rule 4:4-6, which Cartridge quotes, say otherwise.

The email exchanges between the parties' counsel proceeded as follows. Cartridge's counsel emailed the Complaint and Summons to Flinchbaugh's counsel and asked whether Flinchbaugh's counsel was authorized to accept service. (ECF No. 19-1 at 11.) Flinchbaugh's counsel responded in the affirmative and asked Cartridge's counsel when he was available to discuss the matter at length. (*Id.* at 10–11.) Cartridge's counsel sent Flinchbaugh's counsel an "Acknowledgment of Service for [Flinchbaugh's counsel's] review and execution." (*Id.* at 10.) Then, on January 13, 2026, Flinchbaugh's counsel returned the executed Acknowledgement of Service. (*Id.* at 26.)

A review of this back and forth reveals that Flinchbaugh's counsel's December 15, 2025 response email was not *independently* a "textbook example of voluntary acceptance of service." (ECF No. 19 at 8.) NJ Rule 4:4-6, which Cartridge invokes, requires "an acceptance of the service of a summons[] [to be] signed by the defendant's attorney or signed and acknowledged by the defendant," which "shall have the same effect as if the defendant had been properly served." (*Id.* (citing N.J. Ct. R. 4:4-6).) Therefore, pursuant to NJ Rule 4:4-6, Flinchbaugh's counsel's signature on the Acknowledgment of Service was not a formality for waiver purposes, and Flinchbaugh's counsel's response email alone did not amount to a waiver because that email was not a "signed" acceptance of the service of a summons. (ECF No. 19-1 at 26.) Although the December 15, 2025 response email and Flinchbaugh's interactions with Cartridge post-December 15, 2025, allow for some inference that Flinchbaugh had waived service on December 15, 2025, the email and those interactions are not by themselves enough to establish December 15, 2025, as the date waiver occurred. *See Staskewicz v. Harrington Corp.*, Civ. A. No. 10-3361, 2011 WL 976498, at *2

(D.N.J. Mar. 14, 2011); *see also Cmiech v. Electrolux Home Prods., Inc.*, 520 F. Supp. 2d 671, 676 (M.D. Pa. 2007) (concluding that, despite discussions with plaintiff's counsel regarding extensions of time, service was not waived until defense counsel completed the acceptance of service form).

Nevertheless, Cartridge argues December 15, 2025, is the critical date for purposes of gauging when the removal clock began to run, because the Acknowledgment of Service specifically cited December 15, 2025, as the date of service. (ECF No. 19 at 5, 10.) Specifically, the Acknowledgment of Service states:

> On behalf of Defendant, The Flinchbaugh Company, Inc., the undersigned does hereby acknowledge and accept service of the Complaint (Trans ID: LCV20253497421) filed by Plaintiff, Cartridge Actuated Devices, Inc. on December 12, 2025 in the Superior Court of New Jersey, Law Division, Essex County under Docket Number ESX-L-009479-25, along with the Summons, Case Information Statement and Track Assignment Notice *as of this 15th day of December 2025*.

(ECF No. 19-1 at 26 (emphasis added).) In other words, Cartridge contends—and the Court agrees—that waiver still occurred on December 15, 2025, because the effect of the signed Acknowledgment of Service was essentially Flinchbaugh's clear endorsement of December 15, 2025, as the date of waiver.

Flinchbaugh, though, disagrees and points out the "Acknowledgment of Service clearly dates defense counselor's signature on January 13, 2026, the date in which it was executed and filed." (ECF No. 18 at 4.)

*Di Loreto v. Costigan* is instructive. 351 F. App'x at 753. There, the Third Circuit assessed when a defendant waived service under Pennsylvania Law. "Pennsylvania Rule of Civil Procedure 402(b) allows a defendant or his agent to waive service of process by completing an acceptance of service form." *Id.* at 752. That rule is akin to NJ Rule 4:4-6, which allows a defendant to waive

11

formal process via a signed "acceptance of the service of a summons." N.J. Ct. R. 4:4-6; *see also*

*Kalski v. Brandywine Senior Living, LLC*, Civ. A. No. 22-4484, 2022 WL 17823862, at *7 (D.N.J.

Dec. 20, 2022) (applying *Di Loreto* to assess whether removal to this Court from New Jersey state

court was proper given the alleged insufficient service of process). In *Di Loreto*, the Third Circuit

laid down the following principles: (1) "the first clear indication that [the defendant] would forego

any challenge to the defective service was when [the defendant] signed the acceptance of service

form," and (2) defense counsels' "behavior [that] [is] directed at plaintiff's counsel, and not at the

court itself . . . i[s] insufficient to waive service." 351 F. App'x at 753 (citation omitted).

Here, as discussed, Flinchbaugh behaved in ways that suggested it had waived service on

December 15, 2025. That behavior, while independently insufficient to establish the date of

waiver, does not stand alone. Instead, that behavior is indeed reinforced by the language of the

Acknowledgment of Service, which Flinchbaugh's counsel signed and sent over to Cartridge's

counsel. (ECF No. 19-1 at 26.) In combination, both the New Jersey state court and this Court can

readily conclude that December 15, 2025, was in fact the first "clear" indication that Flinchbaugh

had waived service. As Cartridge points out, while Flinchbaugh's counsel sent over the executed

Acknowledgement of Service on January 13, 2026, he communicated that he had "failed to

forward" the executed Acknowledgement of Service and that he "merely want[ed] to ensure all

procedural boxes ha[d] been checked." (ECF No. 19-1 at 22.) In other words, Flinchbaugh's

counsel's delay in sending over the executed Acknowledgment of Service does not mask

Flinchbaugh's otherwise clear intent to forego an objection to formal service as of December 15,

2025.

Flinchbaugh's counsel signed an Acknowledgment of Service that unmistakenly identified

December 15, 2025, as the date Flinchbaugh waived formal service. (ECF No. 19-1 at 26.)

Therefore, the removal clock began to run on December 15, 2025, meaning Flinchbaugh's Notice of Removal was untimely filed on February 4, 2026. *See* 28 U.S.C. § 1446(b). Accordingly, Cartridge's Motion for Remand is **GRANTED.**

### B.  Attorneys' Fees and Costs Are Not Warranted.

Cartridge argues it is entitled to "attorneys' fees, costs, and expenses" under 28 U.S.C. Section 1447(c). (ECF No. 19 at 11–12.) Under *Martin v. Franklin Capital Corp.*, "[t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." 546 U.S. 132, 140 (2005). Courts *may* award attorneys' fees, costs, and expenses "where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141. Here, the Court exercises its discretion to deny Cartridge's request for attorneys' fees, costs, and expenses because under Third Circuit law, Flinchbaugh may well have thought—though incorrectly—that, under these set of facts, the removal clock did not begin to run until January 13, 2026, when it sent over and Cartridge filed the executed Acknowledgment of Service. *See Di Loreto*, 351 F. App'x at 753. Accordingly, remanding the case is a sufficient remedy.

13

## IV.   CONCLUSION

For the reasons set forth above, Cartridge's Motion is **GRANTED** and its request for attorneys' fees and costs is **DENIED**.[6] An appropriate order will follow.

Date: July 10, 2026                     /s/ Brian R. Martinotti
                                        **HON. BRIAN R. MARTINOTTI**
                                        **UNITED STATES DISTRICT JUDGE**

---

[6] Because this matter is longer before the Court, Bodycote need not and should not file a premotion letter with the Court in anticipation of its motion to dismiss Flinchbaugh's amended third-party complaint.